COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Haley and Beales
Argued at Alexandria, Virginia


RAMIN SEDDIQ

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1054-09-4                          JUDGE JAMES W. HALEY, JR.
                                                             JUNE 15, 2010
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                               Bruce D. White, Judge

         Nina J. Ginsberg (Michael S. Lieberman; DiMuroGinsberg, P.C., on
         briefs), for appellant.

         Richard B. Smith, Special Assistant Attorney General (Kenneth T.
         Cuccinelli, II, Attorney General, on brief), for appellee.


                                          I.

     In the trial court, Ramin Seddiq ("Seddiq") was convicted of the felony of abduction in

violation of Code § 18.2-47 and of the misdemeanor of simple assault in violation of Code

§ 18.2-57.  On appeal, he attacks only the sufficiency of the evidence with respect to his

abduction conviction.  Seddiq makes two arguments in support of his sufficiency claim:  1) that

Seddiq's unlawful detention of the victim in this case was incidental to the assault offense and,

thus, cannot support a separate abduction under the incidental detention doctrine explained in

Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), and in other cases; and 2) that

the Commonwealth failed to prove that Seddiq had the intent to deprive the victim of his

personal liberty as required by the abduction statute.  Because we agree with the first argument,

————————————
         [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we need not address the second. Seddiq's abduction conviction is reversed and the indictment against him dismissed.

II.

Facts

Pursuant to the applicable standard of appellate review, we state the facts in the light most favorable to the Commonwealth. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The evidence at trial concerned an encounter between Seddiq and Dr. George Semchyshyn ("Semchyshyn"), Seddiq's psychiatrist, at the latter's office in Falls Church, Virginia, on June 11, 2008. There was much testimony, from both men, describing the history of their psychiatrist-patient relationship, but we shall confine our discussion primarily to the events of June 11, the date mentioned in the indictment. It will be enough to say that between January of 2004 and April of 2008 relations between Seddiq and Semchyshyn were friendly. But in April, Seddiq apparently perceived a new verbal hostility in Semchyshyn's words and in his attitude toward him, and he interpreted this change as an attempt to humiliate him. Semchyshyn testified that he was not conscious of any change in his behavior toward Seddiq, but that when he saw Seddiq again in May, Seddiq was "very anxious" and "beginning to deteriorate." In an attempt to alleviate Seddiq's apparent emotional difficulties, Semchyshyn gave him risperdal, "a strong tranquilizer," and recommended additional therapy sessions.

Seddiq did not make another appointment before coming to Semchyshyn's office at around twenty minutes past noon on June 11, 2008. But the patient who had arranged an appointment had cancelled it, so Semchyshyn was alone in his office when Seddiq arrived. According to Semchyshyn, he first noticed Seddiq at the doorway between his waiting room and his office, holding a gun, and pointing it toward Semchyshyn's upper chest. Seddiq told him, "I want my life back." Semchyshyn replied, "Please, I didn't do anything, let's talk about this."

- 2 -

Quickly, Semchyshyn started backing up further into his office, and moved behind his desk. Seddiq followed him, but did not speak. Semchyshyn "ducked around" the back of his desk. According to Semchyshyn, "[the gun] was pointed at me constantly." Semchyshyn then crouched beside the desk. He testified that he moved "instinctively" and that Seddiq did not touch him. He also testified that Seddiq did not give him any orders; he neither told Semchyshyn to move, nor did he tell him to remain where he was. Seddiq pulled the trigger of the gun, but other than a metallic clicking sound, nothing happened. After this, Seddiq partially removed the magazine, replaced the magazine in the gun, and again pointed the gun at Semchyshyn. By this time, Semchyshyn was standing again, though he remained close to his desk. Semchyshyn remembered Seddiq pulling the trigger again, but he did not hear another clicking sound, and Seddiq then turned around and "ran out" of the office, through the waiting room, and down the stairs.

Semchyshyn moved toward the door to the waiting room, intending to lock it, but then he paused when he saw Seddiq through the glass window in the door to the waiting room. Semchyshyn warned Seddiq that he would call the police. He said that Seddiq replied, "Don't call the police." Semchyshyn told him, "Ramin, we have to talk. Put the gun down. Let's talk." Seddiq did not reply to this. But again he pointed the gun toward Semchyshyn, and again Semchyshyn "instinctively" backed up in the direction of his office. Semchyshyn testified that, at this point, he decided his best chance of escape was to confront Seddiq, so he made what he called "a strong noise." Seddiq turned around and ran away a second time. He ran through the waiting room doorway and down the stairs outside of the doorway. This time Semchyshyn ran after him, and he succeeded in tackling Seddiq on the staircase. Seddiq got up and ran away, leaving his gun at the bottom of the staircase. There were no bullets in the gun, and the entire incident lasted only three minutes.

Seddiq's testimony contradicted Semchyshyn's concerning past events in their therapy sessions, but with respect to the June 11 incident, their accounts are generally consistent. The only differences appear to be that, according to Seddiq, "I want my life back," was the only thing he said to Semchyshyn. According to Semchyshyn, Seddiq also said "Don't call the police," after Semchyshyn suggested he would do that. Their accounts also differed over whether, the second time Seddiq came through the door of Semchsyhyn's office, there was enough room between the desk and the wall for Semchyshyn to move around Seddiq and exit the office. Semchyshyn testified Seddiq was standing in this space and that there was no room for him to go around, while Seddiq testified that there was enough room. But it was undisputed that, at the time, Seddiq was pointing his gun at Semchyshyn and, as a result, Semchyshyn did not feel free to leave. Seddiq testified that he never intended to hurt Semchyshyn, which is why he never loaded any bullets into the gun. According to Seddiq, the reason he went to Semchyshyn's office with the unloaded gun was because he wanted Semchyshyn to "feel the kind of pain and humiliation that I had felt."

A Fairfax County grand jury returned indictments against Seddiq for attempted murder in violation of Code §§ 18.2-32 and 18.2-26, abduction in violation of Code § 18.2-47, and the use of a firearm in the commission of the attempted murder in violation of Code § 18.2-53.1. During his jury trial, counsel for Seddiq conceded he was guilty of committing an assault against Semchyshyn, and at the close of the Commonwealth's evidence Seddiq made a motion to strike the other charges. With respect to the abduction count, Seddiq argued that his unlawful restraint of Semchyshyn's personal liberty was incidental to the assault and could not be punished separately as abduction under the incidental detention doctrine. Seddiq further argued that the Commonwealth failed to prove he intended to abduct Semchyshyn. The jury found Seddiq not

guilty of the attempted murder and related use of a firearm charges. They found Seddiq guilty of abduction and of assault. This appeal followed.

III.

Incidental Detention Doctrine

Pursuant to Code § 18.2-47(A): "Any person, who, by force, intimidation or deception, and, without legal justification or excuse, seizes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Viewed in the light most favorable to the Commonwealth, Semchyshyn's testimony was clearly adequate to establish that Seddiq pointed a gun at Semchyshyn, which had the effect of temporarily depriving him of his personal liberty within the meaning of the statute. However, Seddiq was also convicted of assault for pointing the gun at Semchyshyn. In Virginia, assault is a common law crime. An assault occurs "when an assailant . . . engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). Relying on the incidental detention doctrine, Seddiq argues that his abduction conviction must be reversed because, to the extent his acts had the effect of depriving Semchyshyn of his personal liberty, this was intrinsic to the assault offense for which he was also convicted.

Our Supreme Court first explained the incidental detention doctrine in Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985). The defendant in Brown entered the victim's car in the City of Charlottesville. Ignoring the victim's protests, and after hitting her and threatening that he would "cut her" if she continued to resist, he succeeded in forcing her into the passenger seat of her car, and then he drove the car out of the city to somewhere in Albemarle County, where he raped and forcibly sodomized her. Id. at 312, 337 S.E.2d at 712.

Before his abduction trial in Charlottesville Circuit Court, he was charged and convicted of rape and forcible sodomy in Albemarle County Circuit Court. Brown argued that his abduction charge must be dismissed pursuant to the Fifth Amendment's Double Jeopardy Clause, specifically, that the rape for which he had already been convicted in Albemarle County necessarily involved some degree of forcible deprivation of the victim's liberty, so an abduction trial after his rape conviction operated as a second prosecution for the same offense under the test articulated in Blockburger v. United States, 284 U.S. 299 (1932). Id. at 313, 337 S.E.2d at 712-13. Our Supreme Court did not reach the merits of this issue: "The Supreme Court has decided that [the Blockburger] test need not be applied when the intent of the legislature can be gleaned from a reading of the relevant statutes." Id. (citing Garrett v. United States, 471 U.S. 773 (1985)).

> We adhere to our decision in Scott [v. Commonwealth, 228 Va. 519, 323 S.E.2d 572 (1984),] that detention is a discrete species of abduction. We are of opinion, however, that in the enactment of the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense.

Id. at 314, 337 S.E.2d at 713. The Court then explained what the doctrine means:

> [O]ne accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

Id. at 314, 337 S.E.2d at 713-14. Applying this test to the facts of Brown, the Court found that the abduction and rape were separate offenses.

> It is true that the abduction was prolonged by asportation, but the initial offense was remote in terms of time and distance from the sexual assault and, in terms of quality and quantity, the acts of

> force and intimidation employed in the abduction were separate
> and apart from the restraint inherent in the commission of the rape.

Id. at 314, 337 S.E.2d at 714.

Sometimes also called "the kidnapping merger rule," the incidental detention rule is observed in many jurisdictions. See e.g. Garza v. State, 670 S.E.2d 696, 700-01 (Ga. 2008); People v. Daniels, 459 P.2d 225, 234 (Cal. 1969); State v. Innis, 433 A.2d 646, 655 (R.I. 1981); State v. Cozart, 54 S.W.3d 242, 245 (Tenn. 2001); State v. La France, 569 A.2d 1308, 1313 (N.J. 1990); People v. Gonzalez, 603 N.E.2d 938, 943 (N.Y. 1992); State v. Stouffer, 721 A.2d 207, 215 (Md. 1998); People v. Smith, 414 N.E.2d 1117, 1121 (Ill. App. Ct. 1980); People v. Wesley, 365 N.W.2d 692, 695 (Mich. 1985); State v. Folck, 325 N.W.2d 368, 371 (Iowa 1982); Harkins v. State, 380 So.2d 524, 528 (Fla. Dist. Ct. App. 1980). This Court has explained the rationale of the incidental detention doctrine as follows:

> [A] literal reading of the kidnapping statutes, which often carry
> significant penalties, can lead to an overzealous enforcement, with
> the result that persons who have committed such substantive
> crimes as robbery or assault – which inherently involve the
> temporary detention or seizure of the victim – will suffer the far
> greater penalties prescribed by the kidnapping statutes.

Hoyt v. Commonwealth, 44 Va. App. 489, 493-94, 605 S.E.2d 755, 757 (2004) (quoting Stouffer, 721 A.2d at 212). "In recent applications of Brown, this Court has determined that the question of 'whether the restraint used during an alleged abduction is greater than the restraint inherent in the underlying crime' is ultimately a 'question of law,' which we review *de novo*." Fields v. Commonwealth, 48 Va. App. 393, 399-400, 632 S.E.2d 8, 11 (2006) (quoting Wiggins v. Commonwealth, 47 Va. App. 173, 190, 622 S.E.2d 774, 782 (2005)).

Hoyt reversed the abduction conviction of a defendant who robbed a gas station. During the robbery, the defendant directed one of the two gas station employees who were present at the time to "lay on the floor" and ordered the other to "give me the money." The second employee

walked ten feet to the cash register, retrieved the money inside, and gave it to the defendant, who then left the store about five minutes after he came. 44 Va. App. at 491, 605 S.E.2d at 756. Before applying the incidental detention doctrine, this Court adopted a list of factors to be considered in deciding whether abduction is "incidental" to some other crime. The Court took the factors from the case of Government of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979).

> "Those factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and 4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense."

Hoyt, 44 Va. App. at 494, 605 S.E.2d at 757. Applying the factors, the panel concluded that: 1) the restraint/asportation of the victim lasted only a short time and the distance of the asportation was slight; 2) the detention and asportation occurred during the robbery; 3) the victim was only forced to move ten feet in order to reach the cash register, no more than necessary to accomplish the robbery; and 4) the detention posed no greater danger to the victim than the danger inherent in the robbery itself. Id. at 496-97, 605 S.E.2d at 758-59.

The Commonwealth urges us not to consider Hoyt on the grounds that our Supreme Court "expressly refused to validate the Hoyt rationale" in Walker v. Commonwealth, 272 Va. 511, 636 S.E.2d 476 (2006). But all that the Walker opinion actually says about Hoyt leaves its validity as a Court of Appeals precedent entirely undisturbed[1]:

---

[1] To the extent there has been criticism of Hoyt, that criticism has been directed at the view, explained in footnote 4 of the decision, that the question of whether restraint of the victim was incidental to another offense is a "mixed question of law and fact" to be reviewed *de novo*. See Wiggins, 47 Va. App. at 191, 622 S.E.2d at 782 (Kelsey, J., concurring) (arguing that Hoyt erred in not viewing this issue as a question of fact for the jury) (citing cases); but see Cozart, 54 S.W.3d at 246 (defending *de novo* review).

> In view of our holding [that the incidental detention doctrine does not apply where there is not both an abduction conviction and a conviction for another crime involving restraint of the victim] we need not consider the Court of Appeals' application of <u>Hoyt v. Commonwealth</u>, 44 Va. App. 489, 605 S.E.2d 755 (2004), and we express no opinion on that decision."

<u>Walker</u>, 272 Va. at 517 n. *, 636 S.E.2d at 479 n.*. "The principle of *stare decisis* applies to panel decisions of the Court of Appeals. Panel decisions may be overruled through the *en banc* hearing process, but not by other panel decisions." <u>Harper v. Commonwealth</u>, 54 Va. App. 21, 24, 675 S.E.2d 841, 843 (2009) (citations omitted).

Having established that <u>Hoyt</u> remains good law, it is not difficult to see that the four factors overwhelmingly favor Seddiq's position on appeal. With regard to the first factor (the duration of the detention), the entire encounter between Seddiq and Semchyshyn lasted no more than three minutes, less than the five-minute robbery in <u>Hoyt</u>. As for the second factor (whether the detention occurred during the commission of the separate offense), the assault and detention were simultaneous; there was no difference in the time or place of Seddiq's assault on Semchyshyn and the time or place of the resulting restraint of Semchyshyn's personal liberty. <u>Compare</u> <u>Brown</u>, 230 Va. at 314, 337 S.E.2d at 714 ("the initial offense was remote in terms of time and distance from the sexual assault . . .").

The third <u>Hoyt</u> factor is whether the detention was "inherent" in the other offense, and again we agree that this factor favors Seddiq. The Commonwealth argues that a reasonable jury could have found that Seddiq's actions constituted an assault that was closely followed by a separate abduction, or a more extended abduction, during the course of which Seddiq also committed an assault. The problem with this argument is that *everything* that Seddiq did which contributed to the deprivation of Semchyshyn's liberty – pointing the gun at Semchyshyn as he walked toward him – perfectly fits a definition of common law assault found in the Commonwealth's brief: "an overt act intended to place the victim in fear or apprehension of

bodily harm and creates such reasonable fear or apprehension in the victim." Carter, 269 Va. at 47, 606 S.E.2d at 841. Of course, there was a pause between Seddiq's first flight down the stairs and his quick reappearance in front of the door to Semchyshyn's waiting room. But during that interval there was no restraint on Semchyshyn's liberty. Semchyshyn's liberty was restrained again when Seddiq returned, but only when Seddiq again pointed the gun at Semchyshyn, and once again, Seddiq's behavior satisfied all the elements of a common law assault. Since the record shows no restraint of Semchyshyn's liberty at any time when Seddiq was *not* also assaulting him, we conclude the detention of Semchyshyn was inherent in the assault offense.

Our decision might be different if Seddiq had physically restrained Semchyshyn or attempted to do so, or if Seddiq had verbally ordered Semchyshyn to move, or to remain where he was. Such orders or physical restraints have been significant to prior applications of the incidental detention doctrine. Compare Powell v. Commonwealth, 261 Va. 512, 541, 552 S.E.2d 344, 360-61 (2001) ("Here, there is sufficient evidence to support the finding of the jury that Powell used greater restraint than was necessary to commit rape. First, Powell ordered Kristie to go to a more secluded part of the home prior to the rape."); Brown, 230 Va. at 314, 337 S.E.2d at 714 ("[T]he Commonwealth proved that Brown had deprived his victim of her liberty by physical assaults and threats of violence."); Bell v. Commonwealth, 22 Va. App. 93, 96, 468 S.E.2d 114, 116 (1996) ("Bell's actions in pulling Stanley around the car and ordering her to lie down were acts of restraint and asportation separate and apart from the restraint inherent in either the sexual assault or the robbery."). But in this case, Seddiq never told Semchyshyn to move anywhere; nor did he order him to stay where he was. The record is also clear that Seddiq never tried to tie him up, compare Hoke v. Commonwealth, 237 Va. 303, 311, 377 S.E.2d 595, 600 (1989) (binding and gagging victim was a detention "greater than 'the kind of restraint that is inherent in the act of rape,' or in the commission of robbery" (quoting Brown, 230 Va. at 314,

337 S.E.2d at 714)), and Seddiq never tried to move him by physical force. Compare Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 534 (1987) (dragging victim behind bushes to avoid detection was "not an act inherent in or necessary to the restraint required in the commission of attempted rape"). As for the fourth and final Hoyt factor, there is no evidence that the restraint of Semchyshyn's liberty inherent in the assault posed any physical danger to Semchyshyn apart from the danger created by the assault itself.

The Commonwealth makes two additional arguments, each of which depends on the premise that the incidental detention doctrine is the same as the constitutional protection against multiple prosecutions or punishments for the same offense guaranteed by the Double Jeopardy Clause of the Fifth Amendment. The Commonwealth is correct that both concern related principles. See Walker, 272 Va. at 516, 636 S.E.2d at 479. Brown first developed the incidental detention rule as a response to the defendant's double jeopardy argument, see Brown, 230 Va. at 313, 337 S.E.2d at 712-13, and, like double jeopardy, the doctrine is simply not implicated unless the defendant is convicted of *both* abduction and another crime involving restraint of the victim, Walker, 272 Va. at 516, 636 S.E.2d at 479. But the appropriate legal analysis for incidental detention is different from double jeopardy analysis in at least one important way. Whether a conviction violates the double jeopardy bar against multiple prosecutions or punishments for the same offense depends on the "same elements" or Blockburger test. See United States v. Dixon, 509 U.S. 688, 697 (1993). "In applying the Blockburger test, we look at the offenses charged in the abstract, without referring to the particular facts of the case under review." Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001). However, in applying the incidental detention doctrine, we do *not* look at the two offenses in the abstract:

> In light of the determination in Brown that the legislature did not
> intend to make abduction punishable as a separate offense when
> the abduction was merely incidental to another crime, the
> Commonwealth's argument that we must consider the two offenses

> in the abstract, see Whalen v. United States, 445 U.S. 684, 694 n.8 (1980), to resolve the question before us is unavailing. See Brown, 230 Va. at 313, 337 S.E.2d at 713 ("We do not agree that resolution of the question is controlled by the Blockburger test. The Supreme Court has decided that this test need not be applied when the intent of the legislature can be gleaned from a reading of the relevant statutes.").

Hoyt, 44 Va. App. at 492 n.3, 605 S.E.2d at 757 n.3.

Instead, application of the incidental detention doctrine depends on whether the defendant's actual conduct created a detention separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime. This is why *essentially every published decision* of our Supreme Court and of this Court to consider the application of the incidental detention doctrine has examined the specific facts of the detention in each case, and not merely the elements of abduction and the elements of the other crime involving restraint of the victim. See id. at 496-97, 605 S.E.2d at 758-59; see also Jerman v. Dir. of the Dep't of Corr., 267 Va. 432, 440, 593 S.E.2d 255, 259 (2004); Powell, 261 Va. at 541, 552 S.E.2d at 360-61; Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 153 (1994); Hoke, 237 Va. at 311, 377 S.E.2d at 600; Brown, 230 Va. at 314, 337 S.E.2d at 714; Fields, 48 Va. App. at 399-400, 632 S.E.2d at 11; Pryor v. Commonwealth, 48 Va. App. 1, 8, 628 S.E.2d 47, 50 (2006); Wiggins, 47 Va. App. at 183-90, 622 S.E.2d at 778-82; Abraham v. Commonwealth, 32 Va. App. 22, 27, 526 S.E.2d 277, 279 (2000); Bell, 22 Va. App. at 96, 468 S.E.2d at 116; Phoung v. Commonwealth, 15 Va. App. 457, 462, 424 S.E.2d 712, 715 (1992); Coram, 3 Va. App. at 626, 352 S.E.2d at 534. There would be no need to do this if it were true that we need only consider the offenses in the abstract, as we do when analyzing two offenses for double jeopardy purposes under Blockburger.

Accordingly, we must disagree with the Commonwealth's argument that, because our Supreme Court in Powell held that the incidental detention doctrine did not apply to homicide,

see Powell, 261 Va. at 541 n.11, 552 S.E.2d at 361 n.11, it follows that assault, as a lesser-included offense of homicide, must not implicate the doctrine either. Our Supreme Court has identified *two* definitions of common law assault:

> Based on a review of our prior cases, we conclude that, like the majority of jurisdictions, our prior cases compel the conclusion that a common law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm *or* engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.

Carter, 269 Va. at 47, 606 S.E.2d at 839 (emphasis in original). Even if the first definition of assault might not involve any incidental restraint of the victim, it is the second definition that fits the facts of this case. And Semchyshyn's testimony clearly showed that *the assault in this case* had the incidental effect of restraining Semchyshyn's personal liberty; that is, Semchyshyn did not feel free to leave, because Seddiq pointed a gun at him, and this act created in Semchyshyn a reasonable fear or apprehension of bodily harm. Moreover, the Supreme Court of Michigan has specifically mentioned misdemeanor assaults in explaining the rationale for their similar incidental detention rule: "It is obvious that virtually any assault, any battery, any rape, or any robbery involves some 'intentional confinement' of the person of the victim. To read the kidnapping statute literally is to convert a misdemeanor, *for example, assault and battery*, into a capital offense." Wesley, 365 N.W.2d at 695 (quoting People v. Adams, 192 N.W.2d 19, 23 (Mich. Ct. App. 1971)) (emphasis added).

Finally, the Commonwealth relies on Ostrander v. Commonwealth, 51 Va. App. 386, 395, 658 S.E.2d 346, 350 (2008), for the proposition that, even if the incidental detention applies, the more serious conviction must be affirmed, and the assault conviction dismissed. We disagree, because Ostrander was a double jeopardy case, applying Blockburger, and we have already explained that Brown established the incidental detention by examining legislative intent,

- 13 -

in order to *avoid* application of the <u>Blockburger</u> test. <u>See</u> <u>Brown</u>, 230 Va. at 314, 337 S.E.2d at 713. <u>Brown</u> held that the legislature "did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense." <u>Id.</u> Thus, to punish Seddiq's incidental detention of Semchyshyn as abduction would be to do exactly what the legislature did not intend. Moreover, the rationale for this way of interpreting the abduction statutes – to avoid inflicting the harsh punishment of the abduction statute for incidental deprivations of liberty inherent in lesser crimes, <u>see</u> <u>Hoyt</u>, 44 Va. App. at 493-94, 605 S.E.2d at 757 (citing <u>Stouffer</u>, 721 A.2d at 212) – is clearly inconsistent with the Commonwealth's position.

IV.

<u>Conclusion</u>

For the reasons above, we hold that the trial court erred in denying Seddiq's motion to strike the abduction charge. His conviction for abduction is reversed and the indictment against him dismissed.

<u>Reversed and dismissed.</u>