## Norfolk

JAMES ARTHUR BRAXTON

v.

COMMONWEALTH OF VIRGINIA

No. 1104-90-1

Decided February 4, 1992

Counsel

M. Woodrow Griffin, Jr. (James, Richardson, Griffin & Blanchard, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—James Arthur Braxton appeals his conviction of attempted robbery of Deborah Wilson of currency belonging to First American Bank. He maintains that the evidence was insufficient to prove his intent to commit robbery. We disagree and affirm the conviction.

■ On appeal, we construe the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Deborah Wilson testified that on September 28, 1989, at about 10:30 a.m., Braxton approached her teller station at First American Bank in Hampton, Virginia. He was wearing a cap, sunglasses and a white towel around his neck. She said, "May I help you?" He just stood there and then she said again, "Sir, can I help you?" He said, "I want to make a withdrawal," and she said, "Okay." Braxton was very slow in responding. She said, "Do you have a checking or savings account with us?" Braxton did not respond. Again she repeated her question. Braxton said, "You don't understand. I'm not going to hurt you. I want to make a withdrawal." Again, she said, "Do you have a checking or savings account?" Again Braxton said, "I want to make a withdrawal." She said, "Hold on," and Braxton repeated, "I will not hurt you." Mrs. Wilson obtained a check from the head teller and she and the head teller went back to Braxton. The head teller asked to see his driver's license and Braxton took his hand out of his coat where he had kept it and got his wallet out of his pants. He took out some papers, then put them back into his wallet and put the wallet back into his coat. He then held his hand in a manner which, Deborah Wilson testified, made her believe that she was "about to be robbed." Her "legs went out and [she] fell to the floor." She was "very afraid" and "really scared." Braxton immediately left the bank.

Outside of the bank, Braxton walked rapidly away, removing his jacket and hat, discarding them in a ditch. Roger Ganoe saw

Braxton discard his clothing and told a policeman who went searching for him. When Braxton saw the police, Braxton went into a McDonald's restaurant, exited the other side and began to run. As Braxton was running, he kept his hand in his pocket. The police officer ordered him to stop and remove his hand from his pocket. Braxton failed to do so and the police officer fired a warning shot. After a struggle between the police officer and Braxton that went on through a car wash, other officers arrived, and Braxton was subdued.

In order to prove attempted robbery, the Commonwealth had the burden of proving that Braxton was attempting to obtain money by force through violence, threats or intimidation and that he did some direct overt act toward the consummation of the crime. *Johnson v. Commonwealth*, 209 Va. 291, 293, 163 S.E.2d 570, 571 (1968).

Braxton argues that he never threatened Mrs. Wilson or displayed a gun but merely said that he wished to make a withdrawal, indicating to her at all times that he had no intent to harm her. We reject the implication of his argument that he can avoid a robbery conviction if he has developed a *modus operandi* of committing the crime by implicitly threatening or intimidating his victim while at the same time making explicit statements that, taken out of the context, bely his true intent.

Here, Braxton told Mrs. Wilson that he wanted to make a withdrawal. She queried him to determine if he sought to make an ordinary lawful withdrawal. When he failed to respond in an appropriate manner, it became obvious to Mrs. Wilson that Braxton did not desire to make a lawful transaction. When she suggested the lawful way of making a withdrawal, he advised her that she did not understand, apparently referring to some other manner by which he wished to make his withdrawal. His repeated assurance to her that he would not hurt her implied that he had the capability to do so.

On more than one occasion, Braxton conveyed to Mrs. Wilson that she would not be hurt if she complied with his wishes. If Braxton was attempting a lawful withdrawal, he had no reason to make references to harm which might come to the teller. Furthermore, Braxton held his hand in his pocket, conduct that frightened Mrs. Wilson and further caused her to believe she was about to be

robbed. In light of all of the circumstances, a reasonable person in Mrs. Wilson's position would have reacted as she did and would have believed that Braxton intended for her to believe she was in danger if she did not turn over money to him. Braxton's criminal intent may also be inferred from his conduct in discarding his jacket and hat immediately upon leaving the bank and his flight from the police officer who pursued him.

Thus, based on Braxton's words and conduct in the bank and his actions thereafter, we believe that a rational finder of fact could have found beyond a reasonable doubt that Braxton intended to rob Mrs. Wilson and that he committed an overt act toward that robbery by entering the bank, approaching the teller, and requesting a money withdrawal.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Baker, J., and Willis, J., concurred.