COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Senior Judge Overton
Argued at Chesapeake, Virginia


COREY ALEXANDER WIGGINS, S/K/A
  COREY ALEXANDER LEE WIGGINS
                                                OPINION BY
v.        Record No. 2197-04-1               JUDGE ROBERT J. HUMPHREYS
                                                 DECEMBER 13, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Christopher W. Hutton, Judge

            Charles E. Haden for appellant.

            Robert H. Anderson, III, Senior Assistant Attorney General (Judith
            Williams Jagdmann, Attorney General, on briefs), for appellee.


       Appellant Corey Alexander Wiggins ("Wiggins") appeals his convictions, following a

jury trial, for three counts of abduction with the intent to extort money, in violation of Code

§ 18.2-48, and three counts of using a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1.[1]  On appeal, Wiggins contends that the trial court erroneously denied his motion to

strike the three counts of abduction and the three related counts for using a firearm in the

commission of a felony, reasoning that the detentions allegedly constituting the abductions were

incidental to the commission of the armed robberies during which they occurred.  For the reasons

that follow, we reverse two of the three convictions for abduction and the two related firearm

charges.  The remaining convictions are affirmed.

_____

       [1] Wiggins was also convicted of three counts of robbery, in violation of Code § 18.2-58,
three additional counts of using a firearm in the commission of a felony, in violation of Code
§ 18.2-53.1, and three counts of wearing a mask in public, in violation of Code § 18.2-422.
Those nine convictions are not at issue on appeal.

I.  BACKGROUND

In accord with settled standards of appellate review, we view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth, the party prevailing below. Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004). So viewed, the evidence in this case establishes the following:

A.  The December 29, 2002 Robbery and Abduction

At approximately 6:05 a.m. on December 29, 2002, Wiggins entered a Hardee's fast-food restaurant located in Hampton, Virginia. Wiggins, who was masked and carrying a gun wrapped in a sock, jumped across the counter, pointed the gun at an employee, and said, "Move back." The employee, along with a co-worker, "moved back against the wall with [her] hands up." At that point, Robert Eatman, the shift supervisor, came out of the manager's office and started to close the door. Eatman saw the two employees with their hands up and said, "Oh, shit." Wiggins then pointed the gun at Eatman and told Eatman to "give him the money." Eatman turned around and, with Wiggins following him, walked approximately seven feet back into the office. Once inside the office, Eatman knelt, opened the safe, and gave Wiggins the night deposit bag containing the money. Wiggins left the office, said, "Have a nice day" to the employees still standing against the wall with their hands up, and left the restaurant. The robbery lasted approximately five minutes.

B.  The January 17, 2003 Robbery and Abduction

At approximately 5:30 a.m. on January 17, 2003, Wiggins entered another Hardee's fast-food restaurant. Wiggins, who was again masked and holding a gun covered by a sock, jumped over the counter, entered the kitchen, and pointed the gun at Jodi Mendoza, manager of the restaurant. Wiggins told Mendoza that "he wanted the money." Mendoza told Wiggins that she needed to go into the office and open the safe. Mendoza then walked approximately five feet

- 2 -

to the office, unlocked the office door, entered the office, opened the safe, and handed Wiggins a bag of money. Wiggins then tried to open another safe in the office. When Mendoza told him that it was on an alarm system, he told her to open it for him. Mendoza informed Wiggins that she could not open the second safe for another fifteen minutes because it was on a time delay. Wiggins then left the office and went out the back door of the restaurant. The robbery lasted between five and ten minutes.

## C. The February 6, 2003 Robbery and Abduction

On the evening of February 6, 2003, Wiggins entered a Subway fast-food restaurant, again masked and carrying a gun wrapped in a sock. Wiggins jumped over the counter and entered the back of the restaurant, where Wiggins told two Subway employees to "give [him] the money in the registers." One of the employees, Jamie Drewery, walked approximately twenty-three feet from the back of the restaurant to the front cash register. Wiggins followed. Drewery opened the front cash register, and Wiggins took the money from the register. Wiggins then told Drewery to open the cash register for the drive-through. Drewery walked over to the drive-through cash register, which was located "seven or eight" feet away, and opened that register as well. Wiggins then took the money from the drive-through cash register. Wiggins also asked Drewery to open the safe, but Drewery told Wiggins that she could not open it because it was on a time delay. Wiggins "looked around a little bit," and he then left the restaurant through the back door.

## D. Procedural History

On December 1, 2003, a grand jury indicted Wiggins for three counts of robbery, in violation of Code § 18.2-58, three counts of abduction with intent to extort money, in violation of Code § 18.2-48, six counts of using a firearm in the commission of a felony, in violation of

- 3 -

Code § 18.2-53.1, and three counts of wearing a mask in public, in violation of Code

§ 18.2-422.[2]

During trial, Wiggins moved to strike the three abduction charges and the three related

charges for use of a firearm in the commission of a felony, arguing that the alleged abductions

were not "separate and distinct offense[s]" but were, instead, "just an intrinsic part of the

robber[ies]." The Commonwealth responded that the act of "moving each of these three

managers from one point to another within the store" constitutes an act "separate and apart and

not incidental to the restraint." The trial court agreed with the Commonwealth and denied the

motion to strike, reasoning that the evidence "suggests that the abductions . . . were separate and

apart and not intrinsic to the robbery," but further noting that "the jury, as the fact finders, may

come to some different conclusion."

Wiggins renewed his motion to strike at the close of all the evidence, and the trial court

again denied the motion. The court then instructed the jury that, to establish that Wiggins

committed the crime of abduction with the intent to extort money, the Commonwealth "must

prove that there was a detention of the victim greater than the restraint that is intrinsic in a

robbery." During closing arguments, however, Wiggins did not argue to the jury that the

abductions were merely incidental to the armed robberies, focusing instead on the defense of

mistaken identity.

The jury found Wiggins guilty of all fifteen counts charged in the indictments, and they

recommended that Wiggins be sentenced to twenty years for each of the three counts of

abduction with intent to extort money, five years for each of the three counts of robbery, and five

---

[2] The grand jury also indicted Wiggins for two counts of attempted robbery, in violation of Code §§ 18.2-58 and 18.2-26, and two additional counts of using a firearm while attempting to commit a felony, in violation of Code § 18.2-53.1. Those four indictments were *nolle prossed* and are not at issue on appeal.

years for each of the six counts of using a firearm in the commission of a felony, resulting in a total recommended sentence of 105 years in prison. The jury also recommended that Wiggins receive a $50 fine for each of the three counts of wearing a mask in public.

Defense counsel then moved to set aside the verdict "with regard to the abduction." The trial court, noting that "the matters that the jury had to decide were matters of fact[] appropriate for the finder of fact," denied the motion and imposed the sentence recommended by the jury.[3] Wiggins appeals.

## II. ANALYSIS

On appeal, Wiggins argues that the trial court erroneously denied his motion to strike the three abduction charges and the three related firearm charges, contending that his convictions should be reversed because the alleged abductions "were merely the detentions inherent in carrying out the robberies." Citing Hoyt v. Commonwealth, 44 Va. App. 489, 605 S.E.2d 755 (2004), Wiggins reasons that, "in each instance, the duration of the detention and the distance of asportation was slight," the acts "were not [] separate and apart from the robber[ies]," Wiggins "did no more than what was necessary to accomplish the robbery," and he did not "detain[] and move[] the robbery victim[s] in order to avoid the detection of the robbery." For the reasons that follow, we agree that two of the three detentions were incidental to, rather than separate and apart from, the underlying robbery. Accordingly, we reverse two of Wiggins' convictions for abduction with intent to extort money and the two related convictions for using a firearm in the commission of a felony. We affirm the remaining convictions.

---

[3] Although the "sentencing summary" at the end of the sentencing order indicates that Wiggins was sentenced to 110 years in prison, the body of the order reflects that Wiggins was actually sentenced to 105 years, specifically, "Twenty (20) years on each abduction charge, five (5) years on each Robbery charge, five (5) years on each Use of a Firearm charge and a fifty ($50.00) dollar fine on each of the Wearing a Mask in Public [charges]."

Code § 18.2-47, provides, in pertinent part, that

> [a]ny person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction" . . . .

Code § 18.2-47(A).[4] As noted by the Virginia Supreme Court, an abduction generally inheres in a robbery because "there is usually some detention, and often a seizure, of the victim." Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984). To avoid implicating the Double Jeopardy Clause, the Virginia Supreme Court has therefore held that the statutory definition of "abduction" does not encompass "the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault . . . ." Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713 (1985). Rather, for abduction to be punishable as a separate offense, the detention must be "separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." Id. at 314, 337 S.E.2d at 713-14; see also Jerman v. Director of the Dept. of Corrections, 267 Va. 432, 439, 593 S.E.2d 255, 259 (2004); Powell v. Commonwealth, 261 Va. 512, 540-41, 552 S.E.2d 344, 360 (2001); Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994); Hoyt v. Commonwealth, 44 Va. App. 489, 493, 605 S.E.2d 755, 757 (2004).

A.

This Court has held that the issue of whether the restraint used during an alleged abduction is greater than the restraint inherent in the underlying crime is a mixed question of law

---

[4] Code § 18.2-48, the statute at issue in this case, prohibits the abduction of any individual "with the intent to extort money or pecuniary benefit." Code § 18.2-48(i). "[A]bducting a person as a means of gaining access to the scene or otherwise facilitating the commission of an intended robbery" constitutes an "abduction for pecuniary benefit." Barnes v. Commonwealth, 234 Va. 130, 137, 360 S.E.2d 196, 201 (1987).

and fact.  <u>Hoyt</u>, 44 Va. App. at 496 n.4, 605 S.E.2d at 758 n.4.  Thus, the ultimate determination of whether a defendant may be convicted of both abduction and the underlying crime is a question of law.  However, pursuant to jury instruction number nine, which stated that the Commonwealth "must prove that there was a detention of the victim greater than the restraint that is intrinsic in a robbery," this legal issue was submitted to the jury for determination.  Thus, following oral argument, we asked the parties for additional briefing on the issue of whether Wiggins' failure to object to jury instruction number nine rendered that instruction the "law of the case."

In its supplemental brief, the Commonwealth contends that, by failing to object to the proffered jury instruction, Wiggins implicitly agreed that this issue should be determined by the jury as a factual matter, thereby rendering the jury's conclusion on the issue one of fact that is binding on appeal if supported by credible evidence in the record.  Specifically, the Commonwealth contends that, "because the defendant ultimately agreed at trial that the restraint issue was a factual one for the jury to determine, the legal claim that he advances in this Court necessarily is unavailable to him."  Juries, however, are entitled to draw legal conclusions.  <u>See, e.g.</u>, <u>Terry v. Commonwealth</u>, 5 Va. App. 167, 171, 360 S.E.2d 880, 882 (1987) (noting that the challenged jury instruction properly "informed the jury of the types of evidence the jury could use *to reach legal conclusions*" (emphasis added)).  The submission of this legal issue to the jury did not, therefore, automatically "downgrade" the issue from one of law to one of fact.

Moreover, as noted by the Virginia Supreme Court, "[w]hile the doctrine of invited error remains good law, it simply has no application where, as here, the record shows that a party clearly objected to a specific ruling of the trial court to which error is assigned on appeal, even if the party failed to object to instructions applying or implementing the trial court's prior ruling."  <u>King v. Commonwealth</u>, 264 Va. 576, 582, 570 S.E.2d 863, 866 (2002) (holding that this Court

erred in determining that an appeal was procedurally barred for failure to object to a proffered jury instruction, reasoning that the appellant had clearly preserved his objections in the form of a motion to strike); see also WJLA-TV v. Levin, 264 Va. 140, 159, 564 S.E.2d 383, 395 (2002) ("[W]hen the record is clear that the party is not waiving its objection to the prior ruling, but merely proffering or agreeing to an instruction consistent with the trial court's prior ruling, the previous objection will not be waived."); Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998) (holding that the appellant preserved an issue for appeal despite his failure to object to a proffered jury instruction implementing a prior ruling of the court, reasoning that "counsel made clear to the trial court his objection to the [challenged] ruling . . . and never abandoned or evidenced an intent to abandon the objection"). Thus, because Wiggins clearly presented his objections to the trial court's ruling while arguing his motion to strike and his renewed motion to strike, we hold that Wiggins was not required to object to this jury instruction in order to preserve his objections to the trial court's ruling.

B.

Turning to the merits of the appeal, when deciding whether an abduction is "incidental to another crime," this Court "defer[s] to the trial court's findings of historical fact . . . ." Hoyt, 44 Va. App. at 496 n.4, 605 S.E.2d at 758 n.4. However, because the issue of whether "an abduction is merely incidental to another crime is a question of law," this Court "review[s] *de novo* the trial court's application of those facts to the law." Id. Under the circumstances of this case, although we defer to the trial court's findings of fact, we conclude that the court erred in holding that two of the three abductions were separate and apart from, rather than incidental to, the underlying robberies.

In Hoyt, we identified several factors that Virginia courts have "employed on a case-by-case basis" to determine whether an abduction "is merely an incident of another crime."

- 8 -

Hoyt, 44 Va. App. at 494, 605 S.E.2d at 757. Specifically, we noted that courts should consider: "'(1) the duration of the detention or asportation,'" (2) "'whether the detention or asportation occurred during the commission of a separate offense,'" (3) "'whether the detention or asportation which occurred is inherent in the separate offense,'" and (4) "'whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.'" Id. (quoting Government of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979)).

For the reasons that follow, we conclude that the December 29 and January 17 abductions (the "Hardee's abductions") were incidental to the underlying armed robberies. Accordingly, we reverse these two convictions for abduction as well as the two related firearm charges. However, we further conclude that the February 6 abduction (the "Subway abduction") was not incidental to the underlying armed robbery. Thus, we affirm the third conviction for abduction as well as the related conviction for use of a firearm in the commission of a felony.

### 1. The December 29, 2002 and January 17, 2003 Abductions

In Hoyt, a panel of this Court reversed a conviction for abduction, reasoning that the detention at issue in that case was "incidental to [the] commission of [the underlying] robbery." Id. at 490, 605 S.E.2d at 755. Under the circumstances of that case, the defendant, who was masked and armed, entered a "gas station store" and told an employee to "lay on the floor." Id. at 490-91, 605 S.E.2d at 755-56. Hoyt then told another employee to "give me the money." Id. at 491, 605 S.E.2d at 756. The employee "walked approximately ten feet to the cash register, opened the drawer, placed the money in a bag, and handed the bag to Hoyt." Id. Hoyt then left the store. The robbery itself "lasted no more than five minutes." Id.

In reversing Hoyt's conviction for abduction, we noted that "the duration of the detention and the distance of asportation were slight," reasoning that "the robbery lasted no more than five

- 9 -

minutes" and the victim "was forced to walk only ten feet to the cash register." Id. at 496, 605 S.E.2d at 758. We also observed that "the detention and asportation . . . occurred during the commission of the separate offense of robbery, but . . . were not acts separate and apart from the robbery itself." Id. Moreover, we noted that "the detention and asportation of [the victim] [were] inherent in the robbery," reasoning that, although Hoyt "detained [the victim] for a few moments by threatening him with a gun and forc[ing] him to move ten feet to the cash register," he "did no more than was necessary to accomplish the robbery." Id. Finally, we observed that "the detention and asportation here did not pose a danger to [the victim] independent of and significantly greater than that posed by the robbery itself," nor did the evidence "support an inference that Hoyt detained and moved [the victim] in order to avoid the detection of the robbery." Id. at 497, 605 S.E.2d at 758-59.

The circumstances of the two Hardee's abductions are not significantly different from those presented in Hoyt. First, during each robbery, "the duration of the detention and the distance of asportation were slight." Id. at 496, 605 S.E.2d at 758. Specifically, the first robbery lasted for "four or five minutes," and the victim was forced to walk "seven feet" into an office. The second robbery lasted "five to ten minutes," and the victim was forced to walk "five feet" into an office. As in Hoyt, neither of these victims was forced to move a significant distance, walking instead from one area of the restaurant to another, and neither of the victims was detained for a significant length of time. Cf. Phoung v. Commonwealth, 15 Va. App. 457, 462, 424 S.E.2d 712, 715 (1992) (upholding convictions for robbery and abduction where the defendant tied up the victim "in the kitchen so she could not walk," dragged the victim "to the staircase," carried the victim "up the stairs and placed her on the bed," bound the victim "more securely," and then "took jewelry, money, and other property" from the bedroom, reasoning, inter alia, that "[t]he robbery was remote in time and distance from the initial abduction").

Second, the acts allegedly constituting the detentions "were not acts separate and apart from the robbery itself." Hoyt, 44 Va. App. at 496, 605 S.E.2d at 758. During each of the two robberies, Wiggins singled out one individual, forced that individual to move to a safe, forced the individual to open the safe, took the money, and then fled. Wiggins did not remove any of the employees from the premises or secure any of the employees in a locked room, nor did he force either of the victims to perform an act other than those required to accomplish the robbery itself. Cf. Jerman, 267 Va. at 440, 593 S.E.2d at 259 (holding that the evidence was sufficient to convict the defendant of second-degree murder and abduction where the defendant bludgeoned the victim with a baseball bat, "carried [the victim's] body out of the house, through the backyard to the fence, and then tossed him over the fence," and the victim later died of his injuries, reasoning that the act of removing the victim from the house and throwing him over a fence was "distinct from" the "physical attack upon [the victim]"); Cardwell, 248 Va. at 511, 450 S.E.2d at 153 (upholding convictions for abduction and robbery where the defendant forced the victim to lie facedown on the floor of a car and drove him away from the scene of the robbery, reasoning that "the transporting of [the victim] from the robbery scene was a detention separate and apart from, and not merely incidental to, the robbery and was greater than the restraint intrinsic in a robbery").

Third, although Wiggins detained each victim "for a few moments" by threatening them "with a gun" and forcing them to walk to a cash register or safe, Wiggins "did no more than was necessary to accomplish the robbery." Hoyt, 44 Va. App. at 496, 605 S.E.2d at 758. Specifically, Wiggins did not tie up or otherwise restrain either of the victims, nor did he use an amount of force that was disproportionate to the robbery itself. Cf. Powell, 261 Va. at 541, 552 S.E.2d at 361 (upholding convictions for abduction and rape where the defendant removed the victim "to a more secluded part of the home," bound her hands and legs together, and "and left

- 11 -

her for some time before returning to attempt to kill her"); <u>Hoke v. Commonwealth</u>, 237 Va. 303, 311, 377 S.E.2d 595, 600 (1989) (upholding conviction for rape and abduction where the victim's "wrists and ankles were bound securely," she was gagged "tightly," and "she was detained for a lengthy period," reasoning that the detention of the victim "was greater than the kind of restraint that is inherent in the act of rape, or in the commission of robbery" (internal quotations and citation omitted)); <u>Brown</u>, 230 Va. at 312, 314, 337 S.E.2d at 712, 714 (upholding convictions for abduction and rape where the defendant opened the door of the victim's car, "struck the victim on the side of her head, forced her to move into the passenger's set, [] sat down beside her, . . . drove out of the city," and then "raped and sodomized the victim and forced her to sodomize him," reasoning that "the detention underlying the abduction conviction was not the kind of restraint that is inherent in the act of rape" because, *inter alia*, "in terms of quality and quantity, the acts of force and intimidation employed in the abduction were separate and apart from the restraint inherent in the commission of the rape"); <u>Abraham v. Commonwealth</u>, 32 Va. App. 22, 27, 526 S.E.2d 277, 279 (2000) (upholding convictions for robbery, abduction, and carjacking where "[t]he scope and duration of [the victim's] detention clearly exceeded what was necessary to commit the robbery of her personal property and the theft of his car," noting that the defendant "continued to attack [the victim] after committing the robbery, after abducting [him], and after taking the car"); <u>Phoung</u>, 15 Va. App. at 462, 424 S.E.2d at 715 (upholding convictions for abduction and robbery where the defendant "detained [the victim] on her bed, face down, tied her hands and feet with a rope, later tied her hands and feet together with a telephone cord[,] and covered her with a blanket from the waist up so she could not see," reasoning, *inter alia*, that "the binding of [the] victim's hands and feet together are not acts inherent in the crime of robbery").

Fourth, the detention of each victim "did not pose a danger to [the victim] independent of and significantly greater than that posed by the robbery itself," nor did Wiggins move either of the victims "in order to avoid the detection of the robbery." Hoyt, 44 Va. App. at 497, 605 S.E.2d at 758-59. Neither of the victims was placed in an area posing a significant risk of harm (such as a locked trunk), nor did Wiggins tie up, restrain, or otherwise remove the employees in an effort to avoid detection or apprehension. Cf. Bell v. Commonwealth, 22 Va. App. 93, 97-98, 468 S.E.2d 114, 116 (1996) (upholding convictions for abduction, robbery, and sexual assault where the defendant robbed the victim, pulled her "around the side of [a] car and ordered [her] to lie face down on the sidewalk," and then sexually molested her, reasoning that the defendant's "actions in pulling [the victim] around the car and ordering her to lie down were acts of restraint and asportation separate and apart from the restraint inherent in either the sexual assault or the robbery" because, *inter alia*, the defendant "moved [the victim] to avoid detection"); Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 533-34 (1987) (upholding conviction for abduction with intent to defile and attempted rape where the defendant moved the victim "from a location that was lighted and visible from the street to one out of sight of potential passersby," reasoning that the "asportation of the victim . . . substantially increased the risk of harm to the victim by decreasing the possibility of detecting his criminal activity").

The Commonwealth, however, relying on Barnes v. Commonwealth, 234 Va. 130, 360 S.E.2d 196 (1987), argues that Wiggins was properly convicted of both robbery and abduction because Wiggins' conduct constituted "a means of gaining access to the scene or otherwise facilitating the commission of an intended robbery." Because the issues presented for consideration in Barnes are distinguishable from those presented in this appeal, we disagree.

In Barnes, the defendant "seized" the victim in the parking lot of a convenience store "and used him as a decoy to gain access to the store which, by [the defendant's] own admission,

- 13 -

he intended to rob." Id. at 137, 360 S.E.2d at 201. Once inside the store, the defendant shot and killed two individuals before fleeing the scene. At trial, the defendant was convicted of capital murder, abduction for pecuniary benefit, attempted robbery, and various related firearm charges. Id. at 132, 360 S.E.2d at 198. On appeal, the defendant argued that his conviction for abduction for pecuniary benefit should be reversed because "he released [the victim] once he was inside the store . . . ." Id. The Virginia Supreme Court disagreed, holding that the evidence was sufficient to support the conviction for abduction because the defendant's conduct fell "squarely within the ambit of the statute." Id. at 137, 360 S.E.2d at 201. Notably, the defendant in Barnes did not contend that his conviction for abduction was barred because the detention was incidental to the attempted robbery, nor did the Virginia Supreme Court address that issue. Rather, the defendant's sole contention on appeal was that the evidence was insufficient to support his conviction for abduction. Accordingly, despite the Commonwealth's argument otherwise, we find Barnes unpersuasive and inapplicable to the issue being resolved in this appeal.

Considering all of the circumstances of this case, we conclude that we are bound by the precedent established in Hoyt and, therefore, hold that the detention of each victim in the two Hardee's abductions was incidental to the underlying robberies. Thus, we hold that the trial court erred in denying Wiggins' motion to strike these two abduction charges as well as the two related firearm charges.

### 2. The February 6, 2003 Abduction

However, we further hold that the degree of restraint used in the third abduction was greater than, rather than incidental to, the restraint inherent in the underlying robbery. As in the first two robberies, the acts allegedly constituting this third detention "were not acts separate and apart from the robbery itself," Hoyt, 44 Va. App. at 496, 605 S.E.2d at 758, Wiggins "did no more than was necessary to accomplish the robbery," id., and the detention of the victim "did not

- 14 -

pose a danger to [the victim] independent of and significantly greater than that posed by the robbery itself," id. at 497, 605 S.E.2d at 758-59. During this third incident, however, the victim was forced to walk approximately "twenty-three feet" to the front cash register and then approximately "eight feet" to the drive-through cash register, for a total of thirty-one feet. The degree of asportation was, therefore, significantly greater during this robbery than it was in Hoyt (ten feet) or either of Wiggins' prior robberies (seven feet and five feet, respectively).

Moreover, although the record does not reflect the exact duration of this third robbery, the record supports the inference that it was of greater length than the prior robberies. Specifically, the victim was forced to walk to two separate cash registers in the store located a significant distance away from the area where the victim was initially standing. After taking the money from both cash registers, Wiggins then asked the victim to open the safe, thereby prompting a conversation during which the victim explained that she could not open the restaurant safe because it was on a time-delay system. Finally, Wiggins "looked around a bit" before leaving the restaurant. Accordingly, a reasonable factfinder could have concluded that the detention of the third victim lasted significantly longer than the detention in Hoyt (five minutes) or the detention in either of Wiggins' prior robberies (five minutes and "between five and ten minutes," respectively).

Finally, the record reflects that Wiggins' instructions to the victim during the Subway robbery contained additional directional elements lacking in his two prior robberies. Specifically, Wiggins told the first victim to "give him the money," and he told the second victim that "he wanted the money." Each victim, without additional instruction from Wiggins, then walked over to the office safe and retrieved the money. Cf. Hoyt, 44 Va. App. at 491, 605 S.E.2d at 756 (reversing conviction for abduction where the defendant merely told the victim, "give me the money"). During the Subway robbery, in contrast, Wiggins told the victim to "give

- 15 -

[him] the money *in the registers*." (Emphasis added). After the victim opened the front cash register, Wiggins then told the victim to open the drive-through cash register as well. By giving these additional directions, Wiggins exercised a greater degree of control over the victim and her exact movements. Thus, when combined with the increased distance of asportation and the greater duration of the detention, this exercise of control rendered the degree of restraint used during this third robbery greater than that strictly necessary to accomplish the robbery itself. Accordingly, the trial court did not err in determining that Wiggins' conduct during the Subway robbery would support separate convictions for both abduction and robbery because the restraint used was greater than that inherent in the underlying robbery.

### III. CONCLUSION

Because the detention of the victims was no greater than that necessary to carry out the armed robberies, we hold that the two Hardee's detentions were incidental to, rather than separate and apart from, the underlying robberies. Accordingly, we reverse two of Wiggins' three convictions for abduction with intent to extort money, reverse two of his three related convictions for using a firearm in the commission of a felony, and dismiss these four indictments. The remaining convictions are affirmed.

<u>Affirmed, in part, and reversed and dismissed, in part.</u>

- 16 -

Kelsey, J., concurring in result.

I find no fault with the majority's application of <u>Hoyt v. Commonwealth</u>, 44 Va. App. 489, 605 S.E.2d 755 (2004). My disagreement is rather with <u>Hoyt</u> itself.

Virginia has historically treated the incidental detention issue as one of fact for the jury, subject to the deferential review of Code § 8.01-680. Analyzing the issue under the heading "Sufficiency of the Evidence," the Virginia Supreme Court in <u>Powell v. Commonwealth</u>, 261 Va. 512, 540-41, 552 S.E.2d 344, 360 (2001), found "sufficient evidence to support the finding of the jury that Powell used greater restraint than was necessary to commit rape." <u>Cf.</u> <u>Jerman v. Dir., Dep't of Corrections</u>, 267 Va. 432, 440, 593 S.E.2d 255, 260 (2004) (finding an acquittal improbable even "if trial counsel had requested a jury instruction stating that the restraint inherent in the assault of [the victim] could not serve as the sole basis for a separate abduction conviction").

We looked at the incidental detention issue exactly the same way in <u>Bell v. Commonwealth</u>, 22 Va. App. 93, 96, 468 S.E.2d 114, 116 (1996). Citing Code § 8.01-680, the statutory standard governing appellate review of factual determinations, we held that "the jury's finding of an abduction separate and apart from both the robbery and the sexual assault is not plainly wrong and is supported by the evidence." <u>Id.</u> Along the same lines, we held in <u>Coram v. Commonwealth</u>, 3 Va. App. 623, 626, 352 S.E.2d 532, 534 (1987), that "the record in its entirety sets forth sufficient evidence from which a jury could reasonably infer that the abduction was 'separate and apart from, and not merely incidental to' the crime of attempted rape." <u>Id.</u> (citing <u>Brown v. Commonwealth</u>, 230 Va. 310, 314, 337 S.E.2d 711, 714 (1985)).[5]

---

[5] Other appellate courts likewise treat the incidental detention issue as a question of fact for the jury. <u>See</u>, <u>e.g.</u>, <u>People v. Bridges</u>, 612 P.2d 1110, 1117 (Colo. 1980) (holding that detention "more than incidental to the commission of the underlying crime is circumstantial evidence of specific intent to kidnap for the factfinder, and a jury could be so instructed"); <u>State</u>

Last year, a footnote in <u>Hoyt</u> retooled the appellate standard of review on the incidental

detention issue:

> Whether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case. We defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law. <u>Cf.</u> <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (discussing the standard of review applied in search and seizure cases).

<u>Hoyt</u>, 44 Va. App. at 496 n.4, 605 S.E.2d at 758 n.4. Without any further discussion of the

subject, <u>Hoyt</u> adopted the <u>McGee</u> standard of review reserved for suppression rulings decided

solely by trial judges. <u>McGee</u>, 25 Va. App. at 197-98, 487 S.E.2d at 261 (applying the appellate

standard of review mandated by <u>Ornelas v. United States</u>, 517 U.S. 690, 698-99 (1996)).

The <u>McGee</u> standard of review, however, governs only suppression hearings. It cannot

be sensibly applied in this context. In criminal jury trials, trial judges do not make findings of

historical facts. Neither do juries — they provide only a general verdict of guilty or not guilty.

See <u>Rogers v. Commonwealth</u>, 5 Va. App. 337, 342-43, 362 S.E.2d 752, 755 (1987) (describing

the difficulty in determining precisely the jury's findings as to the incidental nature of the

abduction simply based upon the verdict). Because there are no specific "findings of historical

---

v. Niemeyer, 782 A.2d 658, 666 (Conn. 2001) (explaining that the incidental detention issue "is ordinarily a question for the jury"); <u>Wright v. State</u>, 799 P.2d 548, 549 (Nev. 1990) (stating whether "the movement of the victim is incidental to the associated offense" and "whether the risk of harm is increased" are "questions of fact to be determined by the trier of fact"); <u>State v. Thomas</u>, 911 P.2d 1237, 1239 (Ore. App. 1996) (concluding that kidnapping is not "merely incidental to the commission of the underlying crime" and that issue presents "a question of fact"); <u>State v. Stirgus</u>, 586 P.2d 532, 535 (Wash. App. 1978) (holding that "the question of whether the abduction was merely incidental to the rape was a question of fact for the jury, guided by appropriate instructions of the court").

fact" in criminal jury trials, see *ante*, at 8, what <u>Hoyt</u> ends up doing is placing appellate judges in the uncomfortable role of factfinders.

By adopting this approach, <u>Hoyt</u> has produced an anomaly difficult to describe and harder still to administer. The irony has a certain symmetry to it, though, because <u>Hoyt</u> also invites jurors to render "legal conclusions" in response to jury instructions submitting the "legal issue" to them. *Ante*, at 7. I find this concept particularly hard to accept. "It is, indeed, a maxim of the law, almost coeval with the institution of juries, that it is the office of the judge to respond as to the law, and the jury as to the facts, and few rules are more essential in the administration of justice." <u>Brown v. Commonwealth</u>, 86 Va. 466, 471, 10 S.E. 745, 747 (1890). "In this separation of the functions of court and jury is found the chief value, as well as safety, of the jury system." <u>Sparf v. United States</u>, 156 U.S. 51, 106 (1895); <u>see</u> <u>also</u> <u>Sims v. Commonwealth</u>, 134 Va. 736, 763, 115 S.E. 382, 391 (1922) (Burks, J.) ("In this State the jury are not judges of the law in criminal cases any more than they are in civil cases.").[6]

I thus concur only in the result in this case, as I believe <u>Hoyt</u> requires me to do.

---

[6] Jury instructions are not invitations by the court to the jury to decide questions of law. "Questions of law are for the court and it is improper to submit such questions to the jury, and an instruction that would submit a question of law to the jury is properly refused." Ronald J. Bacigal & Joseph S. Tate, <u>Virginia Jury Instructions</u> § 2:02, at 7 (2005); <u>see</u> <u>also</u> 1 <u>Instructions for Virginia & West Virginia</u> § 34, at 110 (4th ed. 1998) ("An instruction must not submit a question of law to the jury. It is the office of the judge to respond as to the law. An instruction which submits a question of law for jury determination is erroneous, and is properly refused.").