COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia

TYVONE FREEMAN, S/K/A
 TYVONE O. FREEMAN

                                                      MEMORANDUM OPINION*
v.     Record No. 0818-13-2                               PER CURIAM
                                                          APRIL 29, 2014
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Bradley B. Cavedo, Judge

              John A. Rockecharlie (Bowen, Champlin, Carr & Rockecharlie,
              PLLC, on brief), for appellant.

              Benjamin H. Katz, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


       The trial court convicted Tyvone Freeman of abduction and attempted robbery of two

victims, attempted robbery of three other victims, and a consummated robbery of a sixth victim.

On appeal, Freeman challenges his two abduction convictions, claiming that the detention of

these victims was inherent in his attempted robbery of them. We disagree and affirm Freeman's

convictions.

I.

       The evidence at trial proved that on the afternoon of July 26, 2012, Freeman, brandishing

a revolver, entered the reception area of Peter Paul Development Center (the "Center") and

demanded, "I want everyone's wallet." App. at 61. Three individuals — Anthony Christian,

Danyelle Barnes, and Eddie Ross, Sr. — were in the reception area. Freeman pointed the

revolver at these three, demanding their wallets. All three indicated to Freeman that they had no

money on them.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Freeman heard voices coming from offices around the corner and behind the reception desk. He ran in that direction and found another individual, Ingrid Deroo, in her office. Id. at 88. Freeman pointed his revolver at Deroo, ordering her to leave her office and "come out" to the Center's reception area. Id. at 111, 144. She only emerged from her office "[b]ecause he told [her] to." Id. at 112.

En route to the reception area with Deroo, Freeman discovered another individual, Damon Jiggetts, in an adjacent office. Freeman said to Jiggetts, "I know you're on the phone with the police, get up and come out." Id. at 145.[1] Freeman trained his revolver on Jiggetts, directing him to leave his office and go to the reception area. Freeman then walked Jiggetts and Deroo at gunpoint fifteen to twenty feet to the reception area.

Around this time, yet another individual, Jonathan Armstrong, unwittingly came walking down the hallway after having made a phone call from a back office. Freeman pointed the gun at him and demanded money. Because he "didn't have any money," Armstrong offered "a bag of [birthday] balloons and gifts from [his] coworkers" in response. Id. at 132. Freeman rejected them.

After all six of the victims were assembled in the reception area, Freeman brandished his revolver and threatened, "somebody is going to give me some money or I'm going to shoot someone." Id. at 64. Jiggetts and Christian said that they had no money on them but could get some from their cars in the Center's parking lot. "[N]o one is leaving," Freeman responded. Id. at 115. "If somebody don't give me any money, somebody is going to get hurt." Id. at 145. Freeman then singled out Ross, telling him, "you look like you have some money. . . . [Y]ou

_____

[1] Accord App. at 82 (Freeman stated, "I heard you call the police; you need to get out here now"), 88 (Freeman said, "I know you're on the phone with the police"), 113 (Jiggetts was "calling the police," and Freeman said, "I see you on the phone; come out of your office").

better give me something or I'm going to start shooting somebody." Id. at 64-65; accord id. at 134. Ross found roughly eight dollars and some change in his pockets and tried to hand it over to Freeman. Some of the money fell to the floor. Freeman retrieved the money from the floor and ran out of the Center.

Based upon these facts, the trial court convicted Freeman of robbing Ross (the only victim with money) and attempted robbery of everyone else. The court also convicted Freeman of abducting Jiggetts and Deroo (the only victims detained in their offices and then escorted at gunpoint to the reception area).[2] Each of these convictions was accompanied by a conviction for using a firearm during the commission of a felony.

## II.

Several background points must be settled before addressing Freeman's assignment of error on appeal. Freeman challenges only his convictions for abducting Jiggetts and Deroo.[3] With respect to those abduction convictions, Freeman does not argue that he never abducted either victim. He obviously did. "An abduction conviction 'requires only a showing of physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception without more.'" Pryor v. Commonwealth, 48 Va. App. 1, 7, 628 S.E.2d 47, 50 (2006) (quoting Walker v. Commonwealth, 47 Va. App. 114, 121, 622 S.E.2d 282, 285 (2005), aff'd, 272 Va. 511, 516, 636 S.E.2d 476, 479 (2006)). Suffice it to say, Freeman crossed this marker by pointing a revolver at Jiggetts and Deroo, ordering them to leave their

---

[2] Freeman was indicted and convicted of violating Code § 18.2-48, which prohibits abduction of any individual "with the intent to extort money or pecuniary benefit."

[3] The resolution of Freeman's challenge to his abduction convictions would necessarily affect his convictions for using a firearm during the abduction. Freeman thus correctly challenges his parallel firearm convictions associated with the abductions of Jiggetts and Deroo. See Appellant's Br. at 4.

offices, marching them down the hall to the reception area, and keeping them there against their will. See Oral Argument Audio at 2:20 to 2:40 (Freeman's counsel conceding the point).

Freeman's sole challenge to his abduction convictions is premised entirely upon the argument that he cannot be convicted of abducting Jiggetts and Deroo because their abductions were merely "incidental to the detention necessary to complete the attempted robbery" of these two victims. Appellant's Br. at 2. He looks to Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), and its progeny for support for this assertion. We find such support lacking.

An abduction conviction can stand side by side with a detention-plus conviction (such as robbery) so long as they truly constitute factually distinct crimes. See, e.g., Smith v. Commonwealth, 56 Va. App. 711, 723, 697 S.E.2d 14, 20 (2010) (upholding convictions of both abduction and attempted rape on the basis that "[t]he essence of appellant's deception" of the victim in getting her to enter his house "was the perpetration of separate and distinct criminal wrongs against the victim").[4] This unremarkable observation stems from the truism that "a single occurrence may constitute two or more distinct offenses and the accused may be prosecuted for each offense." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 26 (1964).

Virginia cases applying Brown emphasize this factually dissimilar point. The question is not "whether the restraint was merely useful to perpetrating a detention-plus crime," Pryor, 48 Va. App. at 6, 628 S.E.2d at 49, but whether the restraint was "factually distinct from the restraint *inherent* in" the detention-plus crime, Fields v. Commonwealth, 48 Va. App. 393, 399, 632 S.E.2d 8, 11 (2006) (emphasis added). Thus, "[t]he only issue when abduction is charged

---

[4] We assume, without deciding, that attempted robbery can be characterized as a detention-plus crime subject to Brown and its progeny. We recognize, as noted by the concurrence, that no Virginia case has so held.

- 4 -

alongside an offense for which detention is an intrinsic element is whether any detention exceeded the *minimum necessary* to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013) (emphasis added). "But *additional* restraint, either as to duration or degree, is not inherent in [the detention-plus crime] and therefore is not an intrinsic element." Id. at 226, 738 S.E.2d at 869 (emphasis added).[5] This formulation cuts a path through nearly every Virginia case discussing the topic.[6] Whether such additional restraint occurs is a question of fact, not law. As with all issues of factual sufficiency, we defer to the factfinder unless it can be fairly said that no "rational trier of

---

[5] It logically follows that a detention of someone other than the victim of the detention-plus crime falls outside the scope of Brown. It is not inherent in the crime of raping one victim that the rapist simultaneously detains another. Nor is it inherent in the crime of robbing one victim that someone else also be detained at the scene of the crime. In each scenario, the "additional restraint" of the other victim exceeds the "minimum necessary" to be guilty of the detention-plus crime. Lawlor, 285 Va. at 225-26, 738 S.E.2d at 869. Freeman's counsel correctly concedes this point on appeal. See Oral Argument Audio at 1:01 to 1:41, 22:53 to 23:06.

[6] See Hoke v. Commonwealth, 237 Va. 303, 311, 377 S.E.2d 595, 600 (1989) (act of binding and gagging victim was detention "greater than the kind of restraint that is *inherent* in the act of rape, or in the commission of robbery" (emphasis added) (internal quotation marks omitted)); Brown, 230 Va. at 314, 337 S.E.2d at 714 (degree of "force and intimidation" used to detain victim was "separate and apart from the restraint *inherent* in the commission of the rape" (emphasis added)); Fields, 48 Va. App. at 399, 632 S.E.2d at 11 ("[A]bduction-detention of the victim was factually distinct from the restraint *inherent* in his crimes of rape and forcible sodomy." (emphasis added)); Wiggins v. Commonwealth, 47 Va. App. 173, 190, 622 S.E.2d 774, 782 (2005) (duration of robbery was significant consideration in finding the restraint of victim "was greater than that *inherent* in the underlying robbery" (emphasis added)); Hoyt v. Commonwealth, 44 Va. App. 489, 494, 605 S.E.2d 755, 757 (2004) ("duration of [victim's] detention" and any "significant danger to the victim independent of that posed by the separate offense" are significant considerations in deciding *inherent* detention issue (internal quotation marks omitted)); Bell v. Commonwealth, 22 Va. App. 93, 97, 468 S.E.2d 114, 116 (1996) (pulling victim around to side of car and making her lie face down on sidewalk were acts of restraint, asportation, and avoidance of detection "separate and apart from the restraint *inherent* in either the sexual assault or the robbery" (emphasis added)); Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 534 (1987) (dragging victim behind bushes to avoid detection was act of detention "not . . . *inherent* in or necessary to the restraint required in the commission of attempted rape" (emphasis added)).

fact could have found the essential elements of the crime beyond a reasonable doubt."

Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

In this case, ample evidence supports the rationality of the trial court's finding that Freeman used additional restraint beyond what was even arguably inherent or intrinsic in the crime of attempted robbery. Freeman detained Jiggetts and Deroo against their will (and thus abducted them) when he entered their offices and ordered them at gunpoint to follow him to the reception area.[7] He did not once demand money from them during this detention. Freeman's attempted robbery of Jiggetts and Deroo took place *later* — when he pointed his revolver at them in the reception area of the Center and demanded money.

On appeal, Freeman argues that he moved Jiggetts and Deroo to the reception area for the purpose of robbing them there.[8] Perhaps he did — but we nonetheless fail to see the legal relevance of that assertion. It matters not that the detention "was merely useful to perpetrating a detention-plus crime." Pryor, 48 Va. App. at 6, 628 S.E.2d at 49. No doubt it was useful for

---

[7] This fact alone distinguishes this case from Wiggins, which focused on the detention occurring during an actual (not attempted) robbery *after* the robber had demanded money from the victims. 47 Va. App. at 183-87, 622 S.E.2d at 779-81 (addressing victims of Hardee's robberies).

[8] We do not assume, however, the assertion to be factually true. Jiggetts, in particular, was in the process of calling the police when Freeman found him in his office. As noted earlier, Freeman even said to Jiggetts, "I know you are on the phone with the police, get up and come out." App. at 145; accord id. at 82, 88, 113; Oral Argument Audio at 4:57 to 5:25 (counsel's concession that there was "merit" to the Commonwealth's contention that Freeman had interrupted the phone call not because abducting Jiggetts was inherent in or incidental to the attempted robbery, but because Jiggetts was trying to request aid). The trial court, sitting as factfinder, could have justifiably concluded that Freeman intended at that moment merely to prevent Jiggetts and Deroo from thwarting his escape by summoning the police. See Smith, 56 Va. App. at 723, 697 S.E.2d at 19-20 (citing Coram, 3 Va. App. at 626, 352 S.E.2d at 534) (holding that an abduction took place when the defendant lured his intended rape victim into his home in order to decrease the possibility of being caught).

Freeman. Robbing half of a dozen people is far easier when the robber can do it all at once, with all of the victims consolidated in the same area. It makes it less likely that anyone would run off or that the robber (while brandishing his handgun) would have to repeat his give-me-all-your-money threats more than once. When <u>Brown</u> is legally applicable, however, the "only issue" it raises factually "is whether any detention exceeded the minimum necessary" to be guilty of the detention-plus crime. <u>Lawlor</u>, 285 Va. at 225, 738 S.E.2d at 869. By seizing Jiggetts and Deroo from their offices and forcing them at gunpoint to reassemble with other intended victims, Freeman went beyond the minimum detention necessary to either rob or to attempt to rob them. <u>Brown</u> thus does not dictate that his abduction convictions be vacated.

III.

Because the trial court did not misapply <u>Brown</u>, we affirm Freeman's convictions for abduction and his related firearm convictions.

<u>Affirmed.</u>

Kelsey, J., concurring.

I write separately to point out that Freeman's argument, as a matter of law, should never leave the starting blocks.

In Brown v. Commonwealth, 230 Va. 310, 311-12, 337 S.E.2d 711, 712 (1985), the defendant argued that double jeopardy principles forbid the coupling of an abduction conviction with related rape and forcible sodomy convictions when the conduct arose "out of the same criminal episode." Brown resolved the "constitutional problem" by holding that the General Assembly authorized a separate punishment for abduction so long as it did not involve the "kind of restraint which is an *intrinsic* element of crimes such as rape, robbery, and assault." Id. at 313-14, 337 S.E.2d at 713 (emphasis added). Applying that principle to the facts, Brown found that "the record before us shows that the detention underlying the abduction conviction was not the kind of restraint that is *inherent* in the act of rape." Id. at 314, 337 S.E.2d at 714 (emphasis added). Because the "acts of force and intimidation employed in the abduction were separate and apart from the restraint *inherent* in the commission of the rape," id. (emphasis added), the multiple-punishment challenge failed.

As the Virginia Supreme Court has emphasized, Brown applies only when "the guarantee of double jeopardy may be implicated." Walker v. Commonwealth, 272 Va. 511, 516, 636 S.E.2d 476, 479 (2006). It is inapplicable to a case in which "we are not concerned with the application of the double jeopardy clause" because the "constitutional guarantee is not pertinent to the resolution" of such cases. Id. Thus, "[a]bsent the imposition of multiple punishments" for the same offense, "the double jeopardy concerns animating Brown's interpretation of [the abduction statutes] do not exist." Walker v. Commonwealth, 47 Va. App. 114, 123, 622 S.E.2d 282, 286 (2005), aff'd, 272 Va. 511, 516, 636 S.E.2d 476, 479 (2006).

The very restatement of the <u>Brown</u> principle, understood in its proper context, shows the unprecedented nature of Freeman's argument. No Virginia court has ever applied <u>Brown</u> to prohibit convictions of both a detention and an *attempted* detention-plus crime. Without exception, Virginia cases applying <u>Brown</u> have done so only when the defendant was convicted of a detention crime (abduction) and some other fully consummated detention-plus crime (such as rape, robbery, battery) because only these completed crimes include some "intrinsic" or "inherent" (albeit often fleeting) act of detention. <u>Pryor v. Commonwealth</u>, 48 Va. App. 1, 6, 628 S.E.2d 47, 49 (2006) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Fields v. Commonwealth</u>, 48 Va. App. 393, 398-99, 632 S.E.2d 8, 10 (2006).

This makes a great deal of sense. An act of detention is not intrinsic or inherent in an attempted rape, an attempted robbery, or an attempted battery. A criminal attempt requires only the intent to commit a crime coupled with a direct, though ineffectual, act toward its commission. <u>Coles v. Commonwealth</u>, 270 Va. 585, 589, 621 S.E.2d 109, 111 (2005). The "direct, though ineffectual, act," <u>id.</u>, need not be the act of detaining the intended victim. A defendant can be convicted of attempted rape without actually detaining, even for a moment, the intended victim.[9] Similarly, a defendant can be convicted of attempted robbery without ever detaining anyone.[10]

---

[9] <u>See, e.g.</u>, <u>Wright v. Commonwealth</u>, 245 Va. 177, 190, 427 S.E.2d 379, 388 (1993) (affirming attempted rape conviction when, upon exiting her vehicle, the victim was accosted by the gun-wielding defendant who instructed her to remove her clothes so that he could "have sex" with her in the woods, but she took off running instead); <u>Preddy v. Commonwealth</u>, 184 Va. 765, 775, 36 S.E.2d 549, 553 (1946) (holding that "when it is shown by the evidence that the accused did any overt act showing intent, then the crime [of attempted rape] is consummated"); <u>accord</u> <u>Lewis v. State</u>, 35 Ala. 380, 387-90 (1860) (rejecting a similar argument by a defendant that assault was inherent in attempted rape and noting that the victim, who immediately ran upon encountering the defendant, had not been touched or otherwise detained by him).

[10] <u>See, e.g.</u>, <u>United States v. Whitfield</u>, 695 F.3d 288 (4th Cir. 2012) (affirming attempted robbery conviction where armed defendant who intended to rob a bank was thwarted by a locking mechanism triggered by metal detectors at the bank's entrance and was thus kept from ever entering the bank or detaining any victims); <u>Braxton v. Commonwealth</u>, 13 Va. App. 585,

As an analogy, consider multiple punishments in the context of murder. "No Virginia case has ever held that the <u>Brown</u> multiple-punishments principle applies to abduction coupled with homicide." <u>Pryor</u>, 48 Va. App. at 6, 628 S.E.2d at 49. Why not? Could not a murderer detain his victim for the sole purpose of killing him? Yes, but that does not matter. A restraint of the victim's liberty "is not a *necessary* element of homicide. Thus, [a defendant's] contention that the restraint of [the victim] was not more than what was necessary incident to his attempt to kill her is without merit," <u>Powell v. Commonwealth</u>, 261 Va. 512, 541 n.11, 552 S.E.2d 344, 360 n.11 (2001) (emphasis added), because an abduction "can never be said to be legally 'inherent in the act' of murder," <u>Pryor</u>, 48 Va. App. at 6, 628 S.E.2d at 49 (citing <u>Brown</u>, 230 Va. at 314, 337 S.E.2d at 714; <u>Jerman v. Dir. of the Dep't of Corr.</u>, 267 Va. 432, 440, 593 S.E.2d 255, 260 (2004) (dismissing habeas complaint on the ground that abductions immediately preceding and following a murder cannot, as a matter of law, be "inherent in the act of murdering")).

Freeman's argument fails this threshold test of <u>Brown</u>. Convicting him of abduction and *attempted* robbery does not implicate <u>Brown</u> because detention is not intrinsic to, or inherent in, the crime of attempted robbery. As a result, the constitutional "guarantee of double jeopardy" is not "implicated" as a matter of law, <u>Walker</u>, 272 Va. at 516, 636 S.E.2d at 479 — and, thus, neither is <u>Brown</u>. In short, <u>Brown</u> is inapplicable because "we are not concerned with the application of the double jeopardy clause," and the "constitutional guarantee is not pertinent to the resolution of this appeal." <u>Id.</u>

---

586, 414 S.E.2d 410, 411 (1992) (upholding conviction of attempted robbery when the victim bank teller had not been detained, but defendant's threatening statements to her that he would not hurt her if she gave him money as a "withdrawal," accompanied by his feigned possession of a weapon in his pocket, constituted the ineffectual act); <u>see</u> <u>also</u> <u>Chappelle v. Commonwealth</u>, 28 Va. App. 272, 275, 504 S.E.2d 378, 379 (1998) (emphasizing that "either violence or fear may precede robbery" and noting that the "violence inherent in the presentation of a firearm" may be present even though a victim is not placed in fear or does not feel detained).

For this reason alone, Freeman's challenge to his abduction convictions cannot succeed as a matter of law.