# COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia


HERBERT EUGENE SMITH, JR.

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0929-21-2                   JUDGE DANIEL E. ORTIZ
                                                    MARCH 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Paul C. Galanides for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General; David M. Uberman, Assistant Attorney General,
on brief), for appellee.


Herbert Eugene Smith, Jr. appeals his convictions, following a jury trial, for rape and

abduction with the intent to defile, in violation of Code §§ 18.2-61 and 18.2-48.[1]  He asserts that the

prosecutrix's testimony was so inherently incredible or contrary to human experience that it was

unworthy of belief.  He further argues that the Commonwealth failed to prove asportation or

restraint beyond the extent necessary to accomplish the underlying crime of rape.  Lastly, Smith

argues that the trial court violated his Sixth Amendment right to confront witnesses when it

restricted his cross-examination of a cooperating co-defendant.  Because there was sufficient

evidence to support both of Smith's convictions and because Smith failed to sufficiently proffer

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Smith was also convicted of statutory burglary, grand larceny of a motor vehicle, and
credit card theft, which are not subject to this appeal.

the contents of Zekhaire Robinson's anticipated testimony on his dismissed charge, we affirm the convictions.

BACKGROUND[2]

On January 25, 2020, C.A. responded to a message Smith sent to her via Facebook messenger. C.A. and Smith knew each other from high school and made plans to meet and smoke marijuana later that day. When Smith asked C.A. if anyone was with her, she stated she was alone. Smith then informed C.A. that his brother would come with him to pick her up.

Several hours later, Smith arrived at C.A.'s hotel with two men, later identified as Zekhaire Robinson and Shaquan Hill, whom C.A. did not know. The group went to a residence in Gilpin Court. C.A. did not know that Robinson and Hill would also be at the residence.

The group remained downstairs for a short period to roll a marijuana blunt, then went to an upstairs bedroom to smoke it and watch television. C.A. sat in a red camping chair, and Smith sat in a chair next to her while Robinson and Hill sat on a bed. Smith, Robinson, and Hill were drinking alcohol and smoking marijuana, but C.A. testified that she did not drink.[3] C.A. admits she did take three "puffs" of the marijuana but did not feel intoxicated.

During the evening, Smith put his hand on C.A.'s thigh. C.A. removed Smith's hand and asked him what he was doing. Smith responded, "I thought that's what you came here for." She said she "did not." Without warning, Smith picked C.A. up out of the chair and threw her on the bed. Smith and Hill held C.A.'s arms as Robinson took off her pants and underwear. The men

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Scott v. Commonwealth*, 292 Va. 380, 381 (2016) (citing *Baldwin v. Commonwealth*, 274 Va. 276, 278 (2007)).

[3] Many of the details from the night of the assault are contested. C.A. maintains that she did not drink alcohol that night. Robinson testified that C.A. not only drank alcohol but "got drunk."

argued about who was going to "go first" while C.A. attempted to push them off and stated, "I don't want this." Then Robinson raped C.A. for five minutes.

When Robinson ceased his assault, Smith "said that he wanted to go next" and held C.A.'s legs while he raped her for about eight minutes. Robinson and Hill held C.A.'s arms during Smith's assault. As Smith assaulted C.A., he sucked her neck. Next, Smith and Robinson encouraged Hill to participate in the rape of C.A. Hill was the last to violate C.A. as Robinson and Smith held her down. The entire episode lasted approximately 20 minutes.

When the men finished assaulting C.A., they left the bedroom. C.A. gathered her clothes and ran from the residence. Smith, Robinson, and Hill chased her until she found a nearby store where she called her sister to pick her up. When C.A. and her sister arrived back at her hotel, C.A. called her uncle, a law enforcement officer, who directed her to call the police and to not wash herself or her clothing.

Richmond Police Officer Garrick Danko was dispatched to C.A.'s hotel in Henrico and learned that C.A. had been attacked earlier that day but had left the location of the assault. C.A. shared her phone's recent location,[4] Facebook photos, and an Instagram story[5] of her assailants with Officer Danko. While observing the images, Officer Danko noted that one of the suspects wore a blue lanyard.

Officer Danko took C.A. to police headquarters to speak with Detective Baynes and then took C.A. to the hospital. Thereafter, he went to the location C.A. indicated the rape occurred. Officer Danko learned that the residence belonged to Shaquan Hill's mother, who gave consent for the police to search the residence. Officer Danko found an upstairs bedroom exactly as C.A. had

---

[4] When C.A. had called her sister and requested that she pick her up, C.A. had pinned her current location so her sister could find her at 1102 North 2nd Street in the City of Richmond.

[5] Officer Danko explained that an Instagram story is a picture or video posted to an individual's Instagram account that can only be viewed for twenty-four hours.

described and saw Hill was wearing a lanyard that matched the lanyard in the Instagram post C.A. had shown him.

Meanwhile, C.A. was examined by forensic nurse Claryana Feliciano when she arrived at VCU Medical Center. Feliciano explained that when she conducts a forensic exam of a potential rape victim, she interviews the patient and collects physical evidence. Feliciano took samples from C.A.'s neck and genitals. Feliciano conducted a pelvic exam with toluidine blue dye, which revealed several injuries to C.A.'s outer genitalia that were invisible to the naked eye. At the time of the exam, C.A. had a bruise on her neck, linear breaks in the skin, and a small laceration in her outer genitalia. C.A. testified that after the forensic exam, she developed bruises on her arms and legs.

Feliciano also documented C.A.'s account of the incident. C.A. told Feliciano that Smith was raping her when two men walked into the room and asked if it was their turn. Feliciano testified that C.A. told her that she drank alcohol and smoked marijuana that day. Despite that admission, Feliciano did not note that C.A. displayed any signs of intoxication. Feliciano testified that trauma victims sometimes have trouble recalling what happened.

Several days after the assault, Detective Baynes conducted a recorded interview with Smith, that was shown to the jury. Smith denied the incident occurred. Detective Baynes then collected buccal swabs from Smith, Robinson, and Hill.

Forensic biologist Kerri Galloway testified that male DNA was found in the right neck, thigh, and external genitalia samples. Smith could not be eliminated as a major contributor of the right neck sample. Robinson could not be eliminated as a major contributor on the thighs and external genitalia sample. Galloway also found DNA from two other males in the thigh and external genitalia sample but was unable to determine whose DNA was a contributor.

- 4 -

At trial, Robinson testified as a cooperating co-defendant, and his account of the night's events differed slightly from C.A.'s testimony. Robinson testified that he first went to Hill's residence on January 25 and that Smith arrived about ten minutes later. While talking, Smith told Robinson that he had "got a girl." Later that evening, the trio went to a hotel in Henrico to meet the girl (C.A.) and brought her back to Hill's residence. According to Robinson, everyone remained downstairs smoking marijuana and drinking alcohol until Smith and C.A. went upstairs for fifteen minutes. When Robinson and Hill went upstairs, Smith was raping C.A., who told Smith to "get off." Robinson admitted that he raped C.A. while Smith held her down by her arms. Hill was the next to rape C.A. while he and Smith held C.A. by her arms. At the conclusion of the sexual assault, the men went downstairs. Unexpectedly, Smith "blanked out," pulled a gun on Robinson and Hill, and told everyone to "get the fuck out."

Robinson admitted he had three misdemeanor larceny convictions and one conviction for lying to police. Additionally, Robinson admitted that he had one felony conviction for the rape of C.A. He acknowledged he pleaded guilty to raping C.A. under a plea agreement providing that, in exchange for his testimony, Robinson would be sentenced to an active period of incarceration of seven years and nine months.

After the Commonwealth rested, Smith made a motion to strike contending that the evidence was insufficient to convict him of rape and abduction with intent to defile. The trial court denied the motion. Thereafter, Smith renewed his motion to strike, which the trial court again denied. The jury found Smith guilty of rape by force and abduction with intent to defile.

After the jury rendered its verdict but before Smith's final sentencing order was entered, Smith moved to set aside the verdict. The trial court denied this motion. Ultimately, the trial court sentenced Smith to five years for rape and twenty years for abduction with intent to defile. Smith appeals.

ANALYSIS

I. The evidence was sufficient to support Smith's conviction for rape.

*A. Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

*B. Analysis*

Smith asserts that C.A.'s testimony is inherently incredible because her in-court testimony was inconsistent with her prior complaint, the testimony of other witnesses, and physical evidence. He notes that C.A. told Feliciano that she consumed alcohol the evening of her assault, but at trial denied consuming alcohol that night. Additionally, C.A. never told the forensic nurse or police that she was held by her legs and that Hill held her arms, both of which she testified about at trial. Robinson's testimony is also at odds with C.A.'s account of the night of the assault. Robinson testified that C.A. consumed alcohol and smoked marijuana that

evening and that Smith and C.A. were upstairs alone for about fifteen minutes before he and Hill came upstairs to rape C.A., which differs from C.A.'s account that all three men went upstairs with her at the same time and all began holding her down before Smith began raping her.

Finally, Smith argues that there was no indication that C.A. fought off an attack by three men because Feliciano found no evidence of a scrape, a nick, a cut, a bruise, or a fingernail scraping hours after the attack.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). "These same principles apply in cases involving rape, sodomy, and other sexual offenses, which may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence." *Id.* at 548-49.

### C. C.A.'s testimony was not inherently incredible.

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*; *see, e.g.*, *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (holding that a witness was not

inherently incredible despite minor inconsistencies in her testimony). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

At trial, Smith attacked C.A.'s credibility and argued that her version of the events constantly shifted. Despite Smith's claims, C.A.'s testimony was not uncorroborated. At trial, C.A. testified that she and Smith discussed and arranged via Facebook messenger to meet and smoke marijuana. Smith, Robinson, and Hill picked her up and brought her to a Gilpin Court residence. They all smoked marijuana and watched television for several hours in a bedroom.

After C.A. told Smith not to touch her, Smith picked her up out of the chair and threw her on the bed. Robinson removed her clothing while Smith and Hill held her arms, and then all three men took turns raping her. Robinson corroborated much of C.A.'s testimony. Robinson testified that he, Smith, and Hill picked C.A. up from her hotel and returned to Hill's residence in Gilpin Court. The group spent several hours smoking marijuana and drinking alcohol. He admitted he raped C.A. while Smith held her arms. He also admitted that while both Smith and Hill raped C.A., he held her arms.

Any inconsistencies in C.A.'s statements elicited during her cross-examination or during other witnesses' testimony were put before the jury for its consideration. *See Kelley*, 69 Va. App. at 626 ("[A]s Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011))). In exercising its role as the factfinder, the jury weighed the evidence and resolved any inconsistencies in favor of the Commonwealth in

- 8 -

this case. In doing so, the jury necessarily rejected Smith's theory of innocence—that the victim had lied—and found her credible.

The Commonwealth elicited testimony from Detective Baynes and Feliciano that victims of violent crimes often have difficulty remembering details and the sequence of events. Thus, the whereabouts of C.A.'s cell phone during the attack and whether Smith or Robinson raped her first, are details that a jury could reasonably conclude were minor and misremembered. Whether or not C.A.'s inconsistencies were detrimental to her credibility was a determination for the jury. By finding Smith guilty, the jury concluded that C.A. was credible.

The inconsistencies within C.A.'s testimony that Smith raises to this Court simply do not render her testimony "so manifestly false that reasonable men ought not to believe it." *See Juniper*, 271 Va. at 415.

Accordingly, we find that the record supports the jury's credibility determination.

II. The evidence was sufficient to support Smith's conviction for abduction with intent to defile.

Smith contends that the evidence was insufficient to find him guilty of abduction with intent to defile. He asserts that any detention or asportation of the victim was incidental to the alleged rapes and did not constitute a separate offense.

*A. Standard of Review*

"Whether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004). Therefore, the trial court's findings of historical fact are controlling but we review the court's application of those facts to the law *de novo*. *Smith v. Commonwealth*, 56 Va. App. 711, 721 (2010).

- 9 -

*B. Analysis*

"Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Code § 18.2-47(A). If such abduction occurs with intent to defile, the person shall be punished under Code § 18.2-48. "The abduction statute does not contain a temporal requirement, which means a victim can be detained under the statute even if only for the briefest of moments." *Brown v. Commonwealth*, 74 Va. App. 721, 732-33 (2022).

The Virginia Supreme Court has held that

> one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

*Brown v. Commonwealth*, 230 Va. 310, 314 (1985). Further, "[t]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor v. Commonwealth*, 285 Va. 187, 225 (2013). Therefore, the issue becomes whether sufficient evidence exists to support the factfinder's determination that a defendant used greater restraint than that necessary to commit the simultaneously charged offense. *See Powell v. Commonwealth*, 261 Va. 512, 541 (2001).

When considering whether an abduction is incidental to another crime, this Court considers several factors:

> "'(1) the duration of the detention or asportation,'" (2) "'whether the detention or asportation occurred during the commission of a separate offense,'" (3) "'whether the detention or asportation which occurred is inherent in the separate offense,'" and (4) "'whether the

- 10 -

> aasportation or detention created a significant danger to the victim independent of that posed by the separate offense.'"

*Wiggins v. Commonwealth*, 47 Va. App. 173, 183 (2005).

Under either standard—*Wiggins'* four-factor analysis or *Hoyt's* additional restraint test— the evidence was sufficient to demonstrate that Smith abducted C.A.

> *C. There is sufficient evidence of asportation such that the abduction with intent to defile is separate and apart from, and not incidental to, the rape.*

The Virginia Supreme Court has "acknowledged some degree of *detention* to be inherent in rape, robbery, and assault but . . . [has] not indicated that any *asportation* of the victim is similarly inherent." *Lawlor*, 285 Va. at 225 n.13.

Here, Smith lured C.A. to the home under false impressions. This Court has previously found this amount of asportation is sufficient to support an independent conviction for abduction without being subsumed by another offense. *See Smith*, 56 Va. App. at 723 (finding that "slight" asportation occurring from defendant "lur[ing the victim] into his home and into his bedroom by placing her under the false impression that [someone else] was in the bedroom and wanted to see her" was sufficient asportation to support abduction with intent to defile conviction even though the attempted rape occurred almost immediately after the victim entered the bedroom); *Wiggins*, 47 Va. App. at 189 (finding that "the victim [being] forced to walk approximately 'twenty-three feet' to the front cash register and then approximately 'eight feet' to the drive-through cash register, for a total of thirty-one feet" was sufficient asportation to distinguish it from cases where we found the abduction merely incident to a robbery).

Smith initiated contact with C.A. and invited her to "his" house where only his brother was supposed to have been present. Smith ultimately led C.A. to the upstairs floor of the residence with two other men, previously unknown to her. The victim testified that she did not

agree to go to what she believed to be Smith's residence for a "physical encounter." The victim was manipulated and isolated by Smith to facilitate his gang rape of her.

Although luring C.A. to the residence aided in the commission of the rape, it was not *necessary* to accomplish the rape. Furthermore, the asportation here posed a danger to C.A. independent of that posed by the rape itself.

Smith lured C.A. miles from her home under false pretenses, lying about who would be at the residence, and making sure that no one was with her.[6] Smith's plan to abduct C.A. is further illustrated by his encounter with Robinson earlier in the day, showing him the texts between Smith and C.A., and telling Robinson that he "got a girl." Smith then enticed C.A. to an upstairs bedroom to isolate her in a place where the three men could assault her. C.A. testified her protests and resistance during the assault ceased because she feared for her safety. It can be fairly inferred from these different text messages and Robinson's corroboration, that Smith engaged in a plan to lure C.A. and abduct her. There is sufficient evidence to show asportation independent and separate from the rape. Consequently, we affirm the jury's judgment.

### III. Smith's Sixth Amendment right to confrontation was not violated.

Smith asserts that his Sixth Amendment right to confrontation was violated when the trial court prohibited him from asking Robinson about a charge pending in Henrico County at the time of the rape that was subsequently dismissed by *nolle prosequi*. He argues that he was "entitled to explore whether the dismissal of a felony charge in another jurisdiction was part of the favorable treatment . . . Robinson . . . receiv[ed] for his testimony" and whether this motivated Robinson to change his story and testify favorably for the Commonwealth.

---

[6] During their text conversation, Smith asked C.A. if anyone was with her, to which she responded no. In that same text conversation, Smith told C.A. that Smith and his brother would go to pick her up, when in fact Smith, Robinson, and Hill took an Uber to pick her up. Smith never mentioned Robinson nor Hill, both of whom C.A. did not know.

## A. Standard of Review

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)).

## B. Analysis

Smith argues that his right to confront his accusers pursuant to the Confrontation Clause of the United States Constitution was violated when the trial court did not allow him to ask Robinson about an alleged pending felony charge in Henrico. However, Smith failed to timely and sufficiently proffer what he expected the content of that testimony to be. When the trial court sustained the objection to preclude testimony about Robinson's charge in Henrico, it invited Smith to provide a basis to ask about the Henrico charge, asking how it was related to Robinson's deal with the Richmond City Commonwealth's Attorney, stating "[u]nless that is part of the deal or something, you can't impeach him on charges brought up and nol-prossed." Smith "argue[d] that not every consideration that would motivate a person in his position to testify favorably is going to be documented in the plea deal"—without any proffer of the specific expected testimony that would connect Robinson's dismissed charge to his testimony.

After the conclusion of the trial, Smith filed a Virginia Rule of Evidence 2:103 proffer in conjunction with a motion to set aside the verdict. In it, counsel advised the trial court that the prohibited inquiry involved the case of "Commonwealth v. Zekhaire Robinson," GC19079369-00, in Henrico General District Court, charging Robinson with felonious possession of a stolen vehicle. Smith's counsel proffered that he would have introduced the Virginia Courts Case History and would have cross-examined Robinson about the timeline, and whether or not he was aware if anyone had contacted the Henrico detectives or prosecutors about

- 13 -

Robinson's cooperation agreement with the Commonwealth's Attorney in the City of Richmond and whether or not the dismissal of that charge was made to compensate Robinson for his cooperation against Smith. Even this untimely proffer failed to do more than speculate about a connection between Robinson's testimony and his dismissed Henrico charge, and still did not describe the expected testimony.

"The failure to proffer the *expected testimony* is fatal to [a] claim on appeal." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006)). "[W]here admissibility is challenged, the litigant must provide a proffer that is *sufficiently detailed* to give the trial judge a fair opportunity to resolve the issue correctly and contemporaneously." *Creamer v. Commonwealth*, 64 Va. App. 185, 199 n.7 (2015) (emphasis added). Smith failed to proffer any connection between the dismissal of Robinson's Henrico charge and his testimony in this case at the time that the testimony was excluded.

Furthermore, even if Smith's proffer after the conclusion of the trial was sufficient and the trial court erred when it prohibited Smith's line of questioning, any resulting error was harmless because the jury was aware of Robinson's prior criminal history, his plea agreement with the Commonwealth, the details of that agreement, and that Robinson had a charge pending in Henrico when police initially questioned him about C.A.'s assault.

Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "'A defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32 (1973) (quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968)). "If, when all is said and done, the conviction is sure that the error did not influence the [factfinder], or had but slight effect, the verdict and the judgment should stand[.]" *Rose v.*

*Commonwealth*, 270 Va. 3, 12 (2005) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). Therefore, in determining whether an error is harmless, "we must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." *Becker v. Commonwealth*, 64 Va. App. 481, 497 (2015) (quoting *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1007 (1991) (*en banc*)).

On cross-examination, Robinson admitted that he had three misdemeanor larceny convictions, a misdemeanor conviction for lying to police, and a felony conviction for the rape of C.A. Smith's trial counsel then attempted to ask Robinson about a suspended sentence in Henrico County. The Commonwealth objected. The trial court allowed counsel to explore Robinson's potential bias. The trial court stated "[i]f [trial counsel] [is] trying to imply that there is some *quid pro quo* from the Commonwealth, then you [can] ask that question." The court continued "that would be a proper bias. But you are getting around to it in a way that is allowing the objection. If you are asking [Robinson] if there is a deal, ask him if there is a deal and what is it." Trial counsel then elicited a substantial amount of impeachment testimony from Robinson.

The jury learned that when police questioned Robinson, he told them he was not involved in C.A.'s assault and that he wished to be released so that could attend a court date for a pending charge in Henrico that was subsequently dismissed by *nolle prosequi*. Robinson explained at trial that he lied to police when he denied any involvement in C.A.'s assault. Upon learning that his DNA was found on C.A., Robinson decided to accept the Commonwealth's plea agreement because he, in fact, raped C.A. In exchange for his testimony against his co-defendants, Robinson would be sentenced to an active period of incarceration of seven years and nine months, which could be reconsidered. Robinson articulated his hope that his sentence would be reduced because of his testimony.

It was at this juncture that Smith's trial counsel revisited Robinson's charge in Henrico County. The Commonwealth objected and stated that "It's in Henrico. I have nothing to do with it." The trial court sustained the objection, ruling that it was irrelevant and "[t]here is no evidence that Richmond had anything to do with Henrico."

Thus, the jury was aware of Robinson's prior criminal history, his plea agreement with the Commonwealth, the details of that agreement, and that Robinson had a charge pending in Henrico when police initially questioned him about C.A.'s assault. We find that learning whether the Henrico charge was dismissed by *nolle prosequi* because of Robinson's plea agreement in the Richmond case would not have impacted how the jury resolved this case. Consequently, we affirm the trial court's decision.

## CONCLUSION

We find that the evidence was sufficient to convict Smith of rape by force and abduction with the intent to defile and that Smith waived his confrontation argument through his failure to sufficiently proffer what he expected the content of Robinson's testimony regarding his dismissed charge in Henrico to be. Alternatively, even if Smith did not waive his argument, any error would be harmless. Accordingly, we affirm the convictions.

*Affirmed.*